Thomas and Ronald Nash v. Christopher Christie et al. Mr. DaCosta. Good morning, Your Honor. May it please the Court, my name is David L. DaCosta, Deputy Attorney General, representing the Department of Corrections and Department of Human Services Defendant's Appellees in this matter. Your Honor, I'd like to reserve two minutes for rebuttal, if I may. You may. Thank you. Your Honor, in this case, the District Court erred as a matter of law in denying qualified immunity to the defendants without engaging in the highly individualized inquiries of what conduct they allegedly engaged in that violated a clearly established constitutional right of either of the plaintiffs. Are you really just attacking the decision on the both, that they're entitled to qualified immunity because of the insufficiency of the allegations and also challenge the sufficiency of the allegations? I have a hard time understanding how we have, I'm going to, I have a hard time understanding how we have jurisdiction over the particular argument you're pressing here today. We have jurisdiction, Your Honor, because qualified immunity can be raised as an interlocutory appeal if it involves strictly a matter of law. And the District Court was whether under Youngberg v. Romeo there was an entitlement to qualified immunity. That was one of the arguments that we raised in the District Court involving qualified immunity. But the first argument that we raised was they failed to state a claim upon which relief could be granted because they did not allege any action by the individual defendants. And we also allege... You're relying, I assume, on your brief that's J.A. 122, 123. Plaintiff makes no allegations against any state defendants unrelated to their positions. Nowhere do plaintiffs make any allegation of personal involvement. That's correct, Your Honor. And we make those arguments in this below, both in our reply brief and our surreply brief. The plaintiffs responded to our arguments that we had failed to state a claim upon which relief could be granted. But significantly, initially, and they're first response to our argument that they failed to state a claim upon which relief could be granted because they did not identify any conduct by the individual defendants, they conceded that they did not have any facts or evidence upon which they could make an individual capacity claim. This is a motion to dismiss. You cite the Rouse case for this highly individualized inquiry that has to go on. But that's summary judgment. What case do you have that says there is a highly individualized inquiry at the outset with the complaint? In fact, Bistrian would say that in this type of situation where you have state actors who have certain responsibilities and the allegation is they didn't fulfill those responsibilities, that the plaintiff doesn't have to be clairvoyant, obviously can't plead all the particulars. That will come at the summary judgment stage. But they have to plead some particulars, Judge. They have to identify what conduct, some conduct they engaged in. That's Ashcroft v. Ippol, which said that in addition to the fact that there can't be a respondent superior, that purpose rather than knowledge is required in order to impose a constitutional liability. And they have to identify how the individual defendants each personally involved in the specific conduct that allegedly violated its rights. And that was not a motion to dismiss. And they found in that case that the plaintiffs had not alleged. Now, in this case, they have alleged facts. Here there are facts that these people were transferred. They're not getting the treatment. And the individuals they've named are people who are responsible for assuring that they do get this treatment. And we also have the knowledge that this transfer to this prison was turned down because it wasn't going to be sufficient, the training was not going to be sufficient there. So there's knowledge that we're going to have to do something. And the facts are alleged that the treatment isn't being given. Your Honor, those facts are not alleged complaints. It would involve the wholesale adoption of the appellate division decision in the County of Hudson versus the Department of Corrections in which the appellate division laid out in some detail the factional scenario involving the requirement that the Department of Corrections vacate the Corny facility. However, none of these defendants who are presently before the court in an individual capacity were parties to that decision. And I submit you're not have been parties to it, but they certainly know, were aware of the opinion. Were they not put on notice that this is something's got to give here? Your Honor, in this particular case, though, the what they did is the district court imposed cause them all Department of Corrections defendants, but they're not Department of Corrections defendants. There's only one Department of Corrections defendant in the case. And the Department of Corrections is not a defendant in this case. And then he painted them all with the same broad brush of alleged wrongdoing. Now, there are also claims for injunctive relief? Yes, and that's not before this court, Your Honor. So the case is going to go back for discovery? No, really, Your Honor, I think it's going to go back. It's going to go back for a motion to dismiss based on mootness because the conditions that pertained in 2010 no longer pertain. So I don't think there's going to be a need for any discovery going back on the injunctive relief claim. However, on a personal liability claim, I submit that the court should dismiss this complaint because there are no facts alleged against any of the defendants in an individual capacity to show that they engaged in any conduct that violated any of the rights of the plaintiffs in this matter. The district court said that it was defendants' own decisions and acts that causally collected to the denial and reduction in plaintiff's treatment for non-medical reasons, but he never identifies what those decisions and acts were. And you have to do something in order to hold somebody personally responsible in damages rather than just broad paint with a broad brush. While that may be sufficient to get injunctive relief, I don't believe it is sufficient at all to state a claim for individual liability. The district court's decision really stands for the proposition that if plaintiffs can allege that there's constitutional wrongdoing by somebody, that anybody by virtue of their title or their position or their assignment can be held liable to that without the availability of qualified immunity pre-discovery. And that's one of the benefits of qualified immunity for individuals. They don't have to be burdened with the burdens of discovery. Your Honor, I submit that that was the primary problem with the district court's opinion, is it just did not engage in any inquiry as to what the individual defendants did. And as I said a little bit earlier... Well, the test is what? That there have to be allegations that make relief plausible. Against an individual? Against an individual. Isn't it a fair inference that because of their position and the allegations that they went from so many hours of treatment per week to one hour of treatment per week or something like that, that those persons, because of their position, would be those responsible for reduction in the treatment? No, I don't think that that's sufficient, Your Honor, because they each have their separate state agencies and separate state departments with separate statutory responsibilities. And I think they have to be a little more particular than that. And when they responded to our first complaint, motion to dismiss, they didn't even address the arguments that we made that they failed to state any allegations against them in an individual capacity titled monetary relief. They conceded it. And I refer you to Joint Appendix 143, footnote 3, in which they basically conceded that they did not have sufficient evidence and that they wanted to reserve the right to reopen it if discovery provided any facts. They just wanted to proceed on their injunctive relief claim. Judge Debovaugh did not allow that for reasons of judicial economy, so then they just turned around and started saying, well, we proved there was quite sufficient facts. But in fact, they didn't. Nothing changed on that account. And the district court also read way too much, even assuming that you're willing to say it was okay to adopt the County of Hudson's factual basis into the complaint, because the complaint certainly didn't state that, read way too much into the decision of whoever it was to move the facility to East Jersey State Prison, where it is now, because they had looked at it twice before and rejected it the first time. It was considered that the grounds at they were going to build a new building that cost $47 million, and they rejected it for that. The second time they looked at it and they rejected it because it was too large, not because it wasn't big enough to provide the appropriate treatment. So again, there's just no connection anywhere in the decision or the complaint between anything that any of the individuals that are before this court now in an individual capacity did or did not do that would entitle the plaintiffs to get monetary damages. All right. Thank you very much. We'll have you on rebuttal. Ms. Munoz? Am I pronouncing that correctly? Munoz. Yes, Your Honor. Munoz. Thank you. Good morning, Your Honors. My name is Ana Munoz, and I represent Plaintiff Thaddeus Thomas in this appeal. The State urges this Court to reverse Judge Dababoy's thorough and scholarly decision on a ground that it did not raise below and in a manner inconsistent with this Court's precedents. The First Amendment complaint, fairly read, establishes the defendant's act of deliberate indifference towards my client's medical needs. But as Judge Manaske noted, this Court faces a more fundamental problem. It simply does not have the power to hear and decide the only claim to immunity raised and briefed below, the only claim to immunity that the District Court decided, and the only claim to immunity properly before you today. For this reason, the appeal should be dismissed. Your Honors, defendants raised one fact-based claim to immunity below, and nowhere is that more clear than in their SIR reply at Joint Appendix, page 261. There, in a section entitled Defendants' Claim to Qualified Immunity, defendants made clear the basis upon which they were seeking, they were raising that defense. That claim depended on Young-Bergevi Romeo, a case which establishes that civilly confined individuals are only entitled to medical care prescribed by a professional. What do we do when the District Court writes an extensive opinion, not based upon that claim, but based upon another assertion that's at JA 122, as to the lack of specificity? What do we do? Do we strike it and send it back and say, decide this differently? No, Your Honor, because the best that can be said for Judge Debevoise's opinion on qualified immunity is that he was doing his best to grapple with defendants' claim of immunity, and that is evident from the words of his decision. He consistently refers not to a new claim of immunity, but to defendants' claim of immunity, to their argument on immunity. He characterizes it as half-hearted, as vague, and as inchoate. And in addressing it, principally in the opening paragraphs of the section on qualified immunity, he relies on Lemur, he relies on Napoleon, he relies on cases interpreting the Young-Bergev standard as it applies to civilly confined people in the STU. Then he sort of does a thorough job and does his best to make sense of something that was never clearly pulled together for the district court. But again, what do we do about that? Don't we just, wouldn't you urge that we affirm him? Yes, Your Honor, because what Judge Debevoise principally decided is what the defendants have essentially conceded in reply, which is that a Young-Berge based claim that defendants should be held immune from damages or held immune from having to go through discovery in this particular context is a decision that is not appropriate on a motion to dismiss where a complaint has adequately alleged that they violated clearly established constitutional rights. So I'll go back to the question of whether you adequately alleged that a particular defendant violated constitutional rights. And that, as Judge Debevoise made very clear in his thorough opinion, is inferable from the facts alleged in the complaint. The complaint here is simple and straightforward. Defendants collectively chose to transfer my client from a facility where he was receiving adequate care and progressing to a facility that was fundamentally inadequate to address his needs. But you say defendants chose to do this, but there is no allegation in the complaint as to what any of these defendants actually did. Isn't that correct? There is no explicit allegation, Your Honor, that states that these defendants list each person's name and says they were there, they made this choice. But that is not what's required on a motion to dismiss. What's required is that a district court, taking the complaint in its totality, drawing every reasonable and fair inference, is able to connect those dots. And here, it's entirely clear that at paragraphs 10 through 16, the people who were the decision makers, who had control over this system-wide decision, made a choice, which is evident from paragraphs 48 and 50, to transfer my clients from one facility to another. And it's also clear, Your Honor, that they knew the baseline. They knew that at Kearney, there was progress, and that once my clients reached EJSP, which the complaint describes as having prison-like conditions, in which the state says in its opening brief was a former administrative segregation unit designed for solitary confinement, that once there, they received no care, that their care precipitously declined. It's also important to note, Your Honor, that this is a continuing and ongoing violation. In other words, once my clients arrived at EJSP, and it became clear that they were no longer receiving their prescribed care, nothing was done to correct that situation. So even if, in discovery, the state was able to marshal facts that initially they may not have known, once my clients are there, and for years do not have the same number of process groups, for years do not have the same number of modules, for years do not have modules or process groups or any kind of therapeutic treatment with the appropriate mix of residents and with an appropriate course of therapy, and they do nothing, then it's clear that the people who have control to change the system-wide decisions have chosen not to. And that is essentially what Judge Debra Boyce held in this opinion, and that opinion should be affirmed. Do you agree your claims for injunctive relief are now moot? No, Your Honor. If the state would like to argue that our claims for injunctive relief were moot, that is something that would be appropriately brought to the district court, as the injunctive relief plans are not here. I think there would be law of the case issues, and what I can tell you, and obviously it's not appropriate for disposition on appeal, what I can tell you is my clients aren't receiving adequate treatment. My clients are in the same position they have always been. So that would raise a series of factual issues the district court would have to grapple with, and I can sort of assure you that we would oppose such a motion. I ask that question because to me, as a practical matter, if the injunctive claims are not moot, there's going to be discovery on this matter. Why shouldn't we get a fuller record before deciding qualified immunity? I certainly agree, Your Honor, and I would point out that if this court were to find that it has jurisdiction over this defense, then this new claim for immunity would still have been waived. In the reply brief, the state points out that the court, of course, has some equitable discretion in exceptional circumstances to sort of overlook errors and reach claims that it wouldn't otherwise reach, but in this case, that's a pragmatic doctrine based on saving the court's time and resources and based on making sure the parties are treated fairly. Here, there's simply no efficiency gain. There's no reason that parties or courts will benefit from reaching a qualified immunity claim that is new on appeal, that was never reached below, because everyone's going to sit for deposition anyway. Everyone's going to have to go through their email inboxes anyway. The memos are going to be turned over, and it would, of course, allow the court to grapple with these things more fully on a motion for summary judgment. Was there argument on the motion before the court? Was there all argument? I believe there was, Your Honor. I was not an employee of Gibbons at the time, and I did not represent plaintiff at that point in time, but our firm personally did. Our firm did, I did not personally. I'd like to also address the State's claims about County of Hudson, Your Honor. First of all, we maintain, and the district court's opinion rests solidly on the facts alleged in the complaint, but the County of Hudson, to the extent the district court relied on it, was simply filling out context, and it establishes two very general things that are also inferrable from the complaint. The first is that State defendants in this case knew that Kearney was working. They knew, in fact, what County of Hudson makes clear, that Kearney was the only facility that could work, and when they chose a different facility, they were aware that there were profound problems with the other facilities in the DOC system, and only when their hand was forced did they choose a former administrative segregation unit to house my clients. So you're saying it's not that you didn't rely upon it for the truth of what happened there, but more that put these defendants on notice that what they were doing here was questionable at best and was going to require some effort to bring it up to the right standard. Yes, Your Honor, and that's sensible in this case for two reasons. First of all, as Iqbal makes clear, a motion to dismiss is a motion that should still be decided by a court based on their judicial experience and common sense. We trust district courts to work out what's appropriate and what's not, and in every other context other than an exceptional collateral order context, that's the end of the story. If a motion is dismissed and things go to discovery, that's never appealable. Further, Your Honor, a particular thing about County of Hudson, which I think the State has somewhat mischaracterized the facts in that case, these weren't factual findings of the appellate division. The appellate division had original jurisdiction over this action, and the State and the opposing parties submitted a stipulated record. In other words, every fact in County of Hudson is a fact that the State submitted to a court as true, as sort of saying, look, we don't need to have evidentiary hearings. We'll tell you exactly what happened. So to say that these are contested facts is inaccurate just as a matter of New Jersey procedure. All right. If the court has no further questions? Your partner may have a point for you to make. Oh, pardon. I misstated the record. There was no oral argument below. I very much apologize. No worries. I was just curious as to how Judge Debovoise went in a certain direction, different from what had been before him. I wondered if that happened because there was oral argument. No worries. Thank you very much, and I want to thank the Gibbons Law Firm and Mr. Lussberg and you, Ms. Munoz, and your associate as well for undertaking this representation. You do a great service not only to Mr. Thomas, but also to the court by your representation in this matter. Thank you very much. Thank you. Mr. DeCosta. Thank you, Your Honor. Just turning back again to something that came up in the argument of my colleague about the need for discovery in this case, there was another matter which was referenced by Judge Debovoise in his opinions initially on when he severed all the claims claiming that the treatment provided was inadequate and consolidated them with the matter of Alves v. Ferguson, now known as Alves v. Maine, an ongoing decision of litigation that was 10 years old in the district court before Judge Kavanaugh, which was settled in 2012 and which is subject to a monitoring, a yearly monitoring agreement. The treatment that is being provided was agreed to, was provided under that settlement agreement with Ms. Munoz's firm as well as the Seton Hall Center for Justice. And I would submit, Your Honor, that any claims that they were being, plaintiffs in this case, were being denied treatment because the conditions were not set forth, were sufficient to provide it at the time, are indeed moot. The case never would have settled in Alves if it wasn't moot. And if they have any claims about the treatment that they're getting today, the appropriate form to raise it is in their annual review hearing. I submit, but it's not part of this complaint and it's not part of what this court has to decide, which is at the time this complaint was filed, what facts did they allege against my clients, that they did anything wrong, and the fact is they didn't allege any such facts. And unless the court has any other questions, I don't have anything else. I have no other questions. Thank you very much, Mr. D'Costa. Both sides well presented the arguments in this particular matter. We'll take it under advisement and we'll stand.